ADELIA CLAY v. HARDIN HART.

VENDOR AND VENDEE—RESCISSION—INTEREST.—C brought an action of trespass to try title against H. In defense, he alleged and proved a purchase from C's testator of the land, a title bond therefor, and purchase-money notes forming the contract, part payment of one of the notes and of taxes by H. Judgment was rendered for plaintiff for the land, and for defendant for the part payment made by him, and interest from its payment, and for taxes paid by him on the land, and rescinding the contract of sale: *Held*, Error—

1. In allowing interest upon the amount of purchase-money recovered.

2. In rendering a judgment rescinding the sale, there being no ground for such relief alleged or proven.

3. The fact that the vendor treats a contract for sale of land as forfeited by the vendee on failure to pay the purchase-money, is not of itself ground for rescission on the part of the vendee.

4. Where the vendor brings trespass to try title for the land, thus ignoring his contract to sell, the defendant cannot obtain a decree for rescission of the contract and adjusting equities between the parties, without alleging a valid ground for rescission of such contract.

ERROR from Collin. Tried below before the Hon. W. H. Andrews.

May 21, 1873, Adelia Clay brought an action of trespass to try title against Hardin Hart in the usual form, for a tract of land described in her petition.

The defendant pleaded a general denial; not guilty; and, by amendment, alleged his purchase, on 29th of November, 1870, of the land, from L. K. Clay, testator of plaintiff, for the sum of $3,072, to be paid in two equal payments, for

28

which notes were executed, one due February 1, 1871, and the other due April 1, 1871; that at the date of the purchase the vendor executed to defendant a title bond for said land; that on March 9, 1871, defendant paid on the note first due the sum of $1,415, and had paid taxes on the land to the amount of $45; that said vendor had departed this life, leaving his property to the plaintiff; and that no title been made to defendant for the land. Defendant alleged the loss of the title bond, and asked that the contract of the sale be cancelled, and that the sums by him paid on the purchase and for taxes be adjudged him.

The case was tried by the court. The only evidence adduced by plaintiff was the title bond, and the admission of her interest as testatrix of the vendor. The defendant proved part payment as alleged in his answer, and payment of taxes as alleged.

The court rendered judgment for the defendant for the sum paid, and eight per cent. interest thereon from the time of payment, and for the taxes paid as alleged; and cancelling the title bond and the purchase-money notes.

A new trial was refused. Notice of appeal was given, but appeal was not perfected. The case was brought up by writ of error. The errors assigned were, in substance, that neither the answer nor the evidence disclosed a ground for a money judgment against the plaintiff.

*John J. Good,* for plaintiff in error.—The amended answer is an admission of plaintiff's legal title to the land sued for. Without this sequence, the remedy sought and granted was clearly illegal. It is sought and granted for the sole reason " that no valid legal title had been made to defendant." By the terms of the contract, this was not to be done until " payment of the notes in full, at or before their maturity."

The plea admits that the notes are past due, and the greater part unpaid; sets up no tender, or reason for not tendering; alleges no fraud by Clay, nor defect or want of title in

him or plaintiff, but simply that an act had not been done which was not to be done until payment of said notes, and thereby to enable him to take advantage of his own fault, neglect, and wrong.

The question raised by the assignments has been fully and exhaustively examined and well settled in Browning v. Estes, 3 Tex., 462, and Estes v. Browning, 11 Tex., 237.

The authority of these decisions has been recognized in Hill v. Still, 19 Tex., 86, in which Judge Roberts says: "It is not by legal right, but by equitable defense, that one holding under another by title bond can resist ejectment. Generally he must do that by showing full performance, or readiness to perform; and if he has failed to perform, it is incumbent on him to show a waiver of his default, or an equitable excuse for it, and make reparation in some way or other by compensation or damages. Shielded by equity, he must do equity."

Again, the same judge says, in Walker v. Emerson, 20 Tex., 711: "The true position upon that subject, is that the failure to pay the purchase-money when due, gave Emerson the option to sue on the note and subject the land to its payment, or bring a suit for the land by which he could have ejected Izard from it, unless, perhaps, Izard should bring the money into court and claim a specific performance of the contract, not having repudiated it otherwise than by failure in point of time of payment."

Again, by Judge Wheeler, in Secrest v. Jones, 21 Tex., 121, who says: "In case of the default of the vendee, the vendor may elect to abandon the contract and recover back or alienate the land, upon giving notice to the vendee; and his refusal to perform his part of the contract," &c. (See, also, McAffee v. Robertson, 43 Tex., 591–598; Keys v. Mason, 44 Tex., 144.)

*Throckmorton, Brown & Bro.,* for defendant in error.—This case is one in which the plaintiff in error elected to rescind

the sale and sue to recover the land; not, however, offering to return the purchase-money paid, nor showing any equivalent profits to defendant. The defendant does not resist the cancellation of the contract, but asks that plaintiff be required to return the purchase-money and taxes paid.

The suit for the land was an abandonment by plaintiff of the sale. Defendant might have brought the remainder of the purchase-money into court and asked for the enforcement of the bond; or as he did agree to the cancellation and bring into court the bond for title (he accounted for it) and ask judgment for the return of the money paid, both parties sought cancellation, and the equities were adjusted. (Terrill v. DeWitt, 20 Tex., 256.)

The defendant did not resist the suit of plaintiff, but sought an adjustment of the equities, which was fairly done. The cases cited by plaintiff in error do not apply.

Plaintiff, as the sole legatee of defendant's vendor, sought to recover the land and avoid the bond without returning the purchase-money which had been paid upon the bond. The copy of the will introduced by the plaintiff shows that she has received the entire estate of defendant's vendor, and thus, as the legatee of L. R. Clay, seeks to recover the land, and hold the money paid upon it. (25 Tex. Supp., 323; 37 Tex., 581; 20 Tex., 256.)

MOORE, ASSOCIATE JUSTICE.—It is evident the court below must have regarded this action as, in effect, a suit for the rescission of a contract for the sale of land. And if such was its real character, the parties would have been entitled, on their proper presentation by their pleadings, to have had an adjustment of their respective equities, so as to do complete justice between them in respect to the contract sought to be rescinded, and all matters connected with and growing out of it. (Terrill v. DeWitt, 20 Tex., 256; Thomas v. Beaton, 25 Tex. Supp., 321; Harris v. Catlin, 37 Tex., 581.)

But if such was the nature of this case, the judgment in

favor of appellee, for interest on the amount of purchase-money, on the bare averments of his amended answer and the facts developed on the trial, appears to be unwarranted. "Where the purchase-money is paid," says Hemphill, Ch. J., in the case of Patrick *v.* Roach, 21 Tex., 251, "and there has been no manifest injustice or fraud by either party, and the vendor is unable to make title, the rule is to restore the land to the vendor without profits, and the purchase-money to the vendee without interest." And, certainly, a more liberal rule in favor of the vendee cannot be invoked, when the vendor is not in default, but the rescission results solely from the vendee's failing to pay the purchase-money as he contracted and bound himself to do.

But obviously this action as brought by appellant cannot be properly treated or regarded as an action for the rescission of a contract for the sale of land. On the contrary, it is strictly an action of trespass to try title and recover possession of the land, based no doubt upon the plaintiff's supposed right to abandon the contract because of appellee's failure to comply with its terms and stipulations. Whether the facts are such as entitle him to maintain the action as thus brought, need not be now considered. Appellee, by his amended answer and the evidence adduced on the trial, seems to have virtually admitted that there had been such default on his part as would warrant a rescission of the contract; and evidently the court so regarded it. There is nothing in the record, however, to justify or call for the rescission of the contract, unless it is appellee's failure to pay the purchase-money in accordance with the stipulations of the contract. Such being the fact, the court erred in treating the case as a suit for rescission; for evidently appellee could not have brought an independent action for the rescission of the contract on the ground of his mere failure, or even inability, to pay the purchase-money as he had undertaken. Nor can we see that the fact of appellant's abandoning the contract, and bringing an action for the recovery of land upon his superior legal

title, of itself merely, warrants his claiming all the equities which he might if appellant was invoking the aid of a court of equity, instead of seeking to enforce a mere legal title. Where time is not of the essence of the contract, or when there has been no repudiation of it by the vendee, though there may have been such a default as entitles the vendor to treat the contract as abandoned, the vendee may unquestionably present equitable excuses for his negligence or default; and if he will still pay the purchase-money, a conveyance may, and generally no doubt will, be decreed. And unquestionably there may be cases even where the vendee fails to pay the balance of the purchase-money, the court may still relieve him from the forfeiture of the part previously paid; but where this is done, the special facts warranting it must be exhibited by him. We know of no case, however, in which it has been held, where there has been a default in the completion of payment of the purchase-money, and the facts are such as warrant the vendor in suing for the land, that this mere fact alone will warrant the vendee in claiming the repayment of such part of it as he may have paid. To so hold, would be to make one's own default a ground for his equitable relief.

That the vendor, when the vendee is in default, may sue for the land, has been settled in this State by a long train of decisions, the substance and effect of which are believed to be clearly, though briefly, stated by the present chief justice in the case of Wilkins *v.* Emerson, 20 Tex., 706, as follows, viz.: "The true position on that subject is, that the failure to pay the purchase-money when due, gave Emerson the alternative option to sue on the note and subject the land and other property to its payment, or to bring suit for the land by which he could have ejected Izard from it, unless, perhaps, Izard should bring the money into court and claim a specific performance of the contract, not having repudiated it otherwise than by failure in point of time of payment. (Estes *v.* Browning, 11 Tex., 246; Hill *v.* Still, 19

Tex., 76; 2 Story's Eq. Jur., sec. 775, *et seq.*)    The failure to pay the purchase-money did not of itself annul the contract, but gave Emerson, with certain equitable contingencies, the right to do so."

The judgment is reversed and the case remanded.

REVERSED AND REMANDED.