HOOPER, Chief Justice.
Jonathan Blake Rager and Bessie Armi-stead petition for. a writ of mandamus directing-Judge J. Lee McPhearson of the Clarke Circuit Court to vacate his order compelling them to arbitrate claims they brought against Liberty National Life Insurance Company (“Liberty National”).[1]
Rager applied for a “hospital accident policy” with Liberty National. On the application, Rager listed Armistead as the beneficiary. Liberty National approved Rager’s application and mailed him a copy of the policy. Rager was later injured in an accident and was treated at the Grove Hill Medical Center. Liberty National denied coverage on the basis that Rager was not an insured. The denial of coverage occurred because the Grove Hill Medical Center had inquired about coverage for “Jonathan Rag-er.” The name of the insured as listed on the policy was “J. Blake Rager.” Liberty National initially denied coverage because it did not realize that “Jonathan Rager” was in fact the same person as “J. Blake Rager.” Liberty National, upon learning that Rager was in fact an insured, accepted the claim; nevertheless, as a result of the denial, Rager and Armistead sued Liberty National, alleging fraud and bad faith. After limited discovery, Liberty National filed a “Motion to Stay and Arbitration Notice.” . Judge McPhearson granted the motion, ordering Rager and Armistead to arbitrate their claims against Liberty National. This petition for the writ of mandamus followed.
A petition for the writ of mandamus is the appropriate means by which to challenge a trial court’s order compelling arbitra-tion. Ex parte Gates, 675 So.2d 371, 374 (Ala.1996). “Mandamus'is an extraordinary remedy and requires a showing that there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Id
Rager and Armistead argue that they should not have to arbitrate their claims because, they contend, they did not agree to arbitration and, they further contend, Liberty National substantially invoked the litigation process and thereby waived any right it may have had to arbitrate. We hold that the trial court did not abuse its discretion by compelling arbitration, because 1) the policy does contain an arbitration clause to which the plaintiffs agreed and 2) Liberty National had not substantially invoked the litigation process. Therefore, we deny the petition.
I. The Federal Arbitration Act Preempts Ala. Code 1975, § 8-l~U(S) '
The plaintiffs argue that the Federal Arbitration Act should not apply to this case because, they contend, it does not involve interstate commerce. They argue that Ala. Code 1975, § 8-1-41(3), should apply. This section provides that an agreement to submit a controversy to arbitration cannot be specif *335 ically enforced. We conclude that the FAA preempts § 8-1-41(3) in this ease, because the contract in which the arbitration clause appears is a contract involving interstate commerce. See Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Liberty National has offices in 49 states and the District of Columbia. Whenever a claim is filed with Liberty National, it is forwarded to a Liberty National office in Oklahoma for evaluation. Therefore, the issuance of this policy involved interstate commerce, and the FAA applies to this case.
In their reply brief, the plaintiffs argue that the policy contains language that requires the enforcement of § 8-1-41(3). A clause within the policy states, “Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date, is amended to conform to the minimum requirements of such laws.” The plaintiffs argue that the arbitration provision in the policy should not apply because it conflicts with § 8-1-41(3). However, as stated above, § 8-1-41(3) is not applicable in this situation, because it is preempted by the FAA. Thus, the arbitration clause does not conflict with the laws of this state.

II. The Plaintiffs Agreed to Arbitration

The plaintiffs argue that they never agreed to arbitrate their claims against Liberty National. Rager completed and signed an application for insurance. After approving Rager’s application, Liberty National mailed Rager a copy of the policy that it was issuing to him. Attached to the policy from the outset was an endorsement that contained an arbitration clause. The plaintiffs argue that they should not have to arbitrate because the application did not mention arbitration. They also argue that they never signed the endorsement that requires arbitration. Liberty National argues that the endorsement was a valid portion of the policy, and, therefore, that the arbitration clause should apply. We agree with Liberty National.
An unsigned endorsement is valid if it is attached to the policy and is referenced therein. See Greene v. Hanover Insurance Co., 700 So.2d 1354 (Ala.1997). It is undisputed that the endorsement containing the arbitration clause was attached to the policy from the outset. Also, the policy contains the following clause referring to the endorsement: “This policy with any attached papers is the entire contract between you and the Company.” Therefore, we hold that the endorsement is a valid part of the policy and must be enforced.
Also, the policy that Liberty National issued included this clause allowing Rager 10 days to cancel the policy, with no cost, if he did not approve of its terms: “Please examine your policy carefully. Within ten days after this policy is first received, it may be returned to us or the agent through whom it was purchased. If returned, the policy will be as though it had never been issued. Any premiums paid will be returned.” If Rager did not approve of the arbitration clause found in the policy, he should have objected within thé 10 days allowed. The objection to the arbitration clause is untimely. Liberty National gave Rager ample time to examine the policy. By not returning the policy, he agreed to its terms.
The plaintiffs’ argument that the application should have mentioned arbitration is also without merit. Many parts of an insurance policy are not mentioned in the application. If we accepted this argument, then any part of an insurance policy that was not specifically mentioned in the application would be automatically invalid, even if the insured did not object within the time permitted. Such a result would be inequitable to the insurance company.
“An application for insurance is an offer to enter into an insurance contract, and if the insurer issues a policy materially different from that applied for, the policy is a counteroffer which becomes binding only when accepted by the applicant.” Connell v. State Farm Mutual Auto. Ins. Co., 482 So.2d 1165, 1167 (Ala.1985). Even if the inclusion of the arbitration provision was a material alteration of the policy applied for — and we would say it was not — the petitioners would have accepted the counter-offer by not returning *336 the policy and, instead, paying the premiums on it. Therefore, it does not matter that the application did not mention arbitration. The trial court did not abuse its discretion in determining that Rager and Armistead had agreed to the arbitration clause.

III. Liberty National Did Not Waive Its Right To Arbitrate

The plaintiffs argue that Liberty National waived its right to arbitrate by substantially invoking the litigation process. We disagree. A party seeking to prove a waiver of the right to arbitrate has a heavy burden. See Ex parte Dyess, 709 So.2d 447 (Ala. 1997). The parties have conducted very limited discovery in this ease. Liberty National filed an answer, one set of interrogatories, and two sets of requests for production. No depositions have been taken. Approximately four months passed from the time that Liberty National was served with the complaint to the time it moved to compel arbitration. Considering the heavy burden, the limited discovery that has taken place, and the relatively short time that elapsed, we agree with the trial court that Liberty National had not substantially invoked the litigation process. Therefore, the trial court did not abuse its discretion by determining that Liberty National had not waived its right to arbitrate.

IV. Conclusion

Given the extraordinary nature of a writ of mandamus, we conclude that Judge McPhearson did not err in granting Liberty National’s motion to compel arbitration. Therefore, we deny the petition for the writ of mandamus.
WRIT DENIED.
MADDOX, HOUSTON, KENNEDY, and SEE, JJ., concur.
COOK, J., concurs in the result.
ALMON and BUTTS, JJ., dissent.
SHORES, J., recuses herself.

. The complaint in this case named this defendant as "Liberty National Insurance Company.” The policy involved was in fact issued by Liberty National Life Insurance Company.